UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN WESLEY GREEN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> METROPOLITAN GOVERNMENT OF ) <br> NASHVILLE AND DAVIDSON COUNTY, ) <br> ) <br> Defendant/Third Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOULT, CUMMINGS, CONNERS & ) <br> BERRY, PLC, and CHAMPS-ELYSEES ) <br> INC., ) <br> ) <br> Third Party Defendants. ) | No. 3:06-1216 <br> JUDGE ECHOLS |

## MEMORANDUM

Numerous motions have been filed in this case, including Defendant Metropolitan Government of Nashville And Davidson County's Motion to Dismiss (Docket Entry No. 30), and Third-Party Defendant's Motion To Dismiss Or, In The Alternative, To Stay Proceedings (Docket Entry No. 33), to which the parties have filed responses in opposition and replies. For the reasons stated below, the Motions to Dismiss will be granted, and Third-Party Defendant's alternative Motion to Stay Proceedings will be denied.

In light of the ruling on the Motions to Dismiss, the Court will deny as moot the four pending motions for summary judgment (Docket Entry Nos. 44, 84, 87 & 88), Plaintiff's pending appeal (Docket Entry No. 76) from the Magistrate Judge's December 3, 2007 Order, Defendant Metropolitan Government's Motion To Strike Plaintiff's Statement of Undisputed Facts (Docket Entry No. 61), and Plaintiff's Motion To Accept Memorandum As Filed, Or In The Alternative, Allow Filing of Amended Memorandum (Docket Entry No. 102).

1

In December 2006 Plaintiff John Wesley Green ("Green") brought this civil rights action against Defendant Davidson County Sheriff Department/Metropolitan Government of Nashville (Docket Entry No. 1.) The parties agreed that the only proper Defendant is the Metropolitan Government of Nashville and Davidson County ("Metro"), so the Magistrate Judge directed the Clerk to terminate the Defendant as named by Plaintiff and to substitute Metro as the only Defendant. (Docket Entry No. 13, Order.)

Green's claims arise out of a writ of execution on a state court judgment conducted by the Metro Sheriff's Office in December 2006. Green alleges pursuant to 42 U.S.C. §1983 claims against Metro for deprivation of procedural and substantive due process and illegal seizure of property under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, as well as a Tennessee state law-claim for "false return."

Seeking coverage under an indemnity bond, Metro filed a third-party complaint (Docket Entry No. 14) against Boult, Cummings, Conners, and Berry, PLC ("Boult Cummings"), a Nashville law firm, and Champs-Elysees, Inc. ("Champs-Elysees"), a Tennessee corporation closely held by the Green family. Metro later voluntarily dismissed its claim against Champs-Elysees (Docket Entry Nos. 28-29), leaving only Green, Metro and Boult Cummings as parties to the suit.

The following facts are taken from Green's Second Amended Complaint or documents which are appended to the pleading and referenced by the parties. The Court takes judicial notice of the relevant state court pleadings and decisions provided by the parties. In ruling on the Motions to Dismiss, the facts stated are assumed to be true.

## I. FACTS

Green is a citizen and resident of Davidson County, Tennessee. Green sued his mother, Edna Green, in the Chancery Court of Davidson County seeking to enforce an agreement he alleged his mother made to sell her stock in Champs-Elysees to him. At the time of the suit, Green had been in charge of the company for several years. Champs-Elysees intervened in the Chancery Court lawsuit and alleged that Green had taken corporate funds without authorization by writing checks

2

to himself. On September 15, 2006, the Chancery Court granted summary judgment in favor of Edna Green, ruling that the stock sale agreement she allegedly made with Green was unenforceable. The Chancery Court also granted summary judgment to Champs-Elysees on the misappropriation claim and awarded it a money judgment of $46,600. Green appealed the decision to the Tennessee Court of Appeals, which recently reversed the grant of summary judgment in favor of Edna Green and Champs-Elysees. Green v. Green, 2008 WL 624860 (Tenn. Ct. App. Mar. 5, 2008).

On November 3, 2006, Champs-Elysees, as judgment creditor and acting through its counsel, Boult Cummings, issued an "Execution/Garnishment/Levy" in the Chancery court case seeking to levy on "Judgment debtor's stock in Champs-Elysees, Incorporated (see attached) to be sold pursuant to T.C.A. Section 26-5-106 (See Attached list of exemption (sic)[ ]" This information appeared in a section called "Description of Property." Green alleges there was no physical evidence of his stock ownership attached to the levy, nor was there any list of exemptions. The total judgment amount was $48,867.10 and included the original judgment, interest as provided in the Chancery Court's decision, clerk's fees, and officer's fees. The document was signed or initialed by a deputy court clerk. (Docket Entry No. 30-6.)

On November 17, 2006, a Davidson County Sheriff's officer appeared at Green's residence. In response to a demand for his "stock certificate," Green advised the officer that the stock certificate was not in his possession and he believed it to be in the possession of his attorney. The officer did not leave any paperwork with Green.

On November 30, 2006, the Davidson County Sheriff's officer, accompanied by Captain Warren of that office, again appeared at Green's residence. In response to a second demand for his "stock certificate," Green again advised that the stock certificate was not in his possession and it was believed to be in his counsel's possession. Captain Warren served a pink carbon copy of the writ of execution on Green, but left no other documents with Green and did not take possession of any documents from Green. Captain Warren told Green that he was going to sell Green's interest in Champs-Elysees and Green would receive notice by mail of the sale date and time. The pink copy

Captain Warren left with Green did not list any property upon which the Sheriff would levy. The Sheriff checked the box next to the words "By levying this execution on the property listed below:" but Green alleges "there is no property listed in this section." (Second Amended Complaint ¶ 20.)

On December 5, 2006, Green received a notice from Captain Warren entitled: "Sheriff's Sale." (Docket Entry No. 17, Ex. B.) The notice stated that the Sheriff intended to sell to the highest bidder for cash, at 10:00 o'clock a.m., on December 22, 2006, at the Jerry Newsom Center **"22,000 Shares of stock in Champs-Elyees Inc.,"** known "as the property of John Wesley Green" to satisfy a judgment in favor of Edna Green and "Champs-Elyees, Inc." (Id. (emphasis in original).) Green alleged that he does not own any shares of stock in "Champs-Elyees Inc."; rather, he owns stock in "Champs-<u>Elysees, Incorporated.</u>" (Second Amended Complaint ¶¶ 22-26.) The December 5 letter Green received also included a "Certificate of Ownership" indicating that Green owns 22,000 shares of common stock in Champs-Elysees, Inc 'as <u>evidenced</u> by Certificate 13 issued on May 1, 1990.' (emphasis added)." (Id. at ¶ 20.) The "Certificate of Ownership" appended to the complaint was provided by Green's brother, Mark Green, as Secretary of "Champs-Elysees, Inc." Green alleges he did not receive a copy of any "stock certificate" evidencing ownership, and there are no "stock certificates" in the name of "Champs-Elysees Inc." (Id. ¶¶ 27-28.)

Green alleges that on December 6, 2006, both Captain Warren and Constance Taite, Administrative Counsel of the Davidson County Sheriff's Department, advised Green's counsel "that it is the custom, practice and policy of the Davidson County Sheriff's Department not to exercise independent judgment to correct, modify, or review any Levy issued by a court, regardless of its facial validity[.]" (Id. ¶¶ 29-30.) On December 15, 2006 Green served a Motion to Quash that he had previously filed in Chancery Court, allegedly giving written notice to Edna Green, Champs-Elysees and Metro of the defective levy and notice of sale. (Id. ¶ 31.)

On December 19, 2006, Green's counsel requested from Ms. Taite a copy of the executed levy in the possession of the Davidson County Sheriff. (Id. ¶ 32.) On December 20, Green's counsel received a facsimile from Captain Warren. (Id. Ex. C.) The copy of the levy provided by Captain

4

Warren had the box marked next to "By levying this execution on the property listed below:" and a property description stating "Served Mr. Wesley Green. Sale Pending of Described Stock." There is no other description of the property to be sold. (Id. ¶ 34.) Green alleged that stock certificates are personal property and there is no indication on the levy that any property was seized by the Sheriff. (Id. ¶¶ 35-36.) The Sheriff's Office took no property into its possession during its two attempts to serve the levy. (Id. ¶ 39.) The Sheriff's Office did not serve the levy on the issuer of the stock, Champs-Elysees, at its chief executive office in Nashville, Tennessee. Green alleges, on information and belief, that the judgment creditor instructed the Davidson County Sheriff's Office that it was not necessary to serve the levy on the issuer of the stock at Champs-Elysees' chief executive office. The Sheriff's Office made no attempt to serve the levy on Green's legal counsel and/or any party holding a security interest in the stock. Green alleges that, because the Sheriff's Office did not take possession of the property (stock certificates), the judicial lien did not attach. Green alleges that Captain Warren sold personal property that was not in his possession. (Id. ¶¶ 42, 44, 45.) Green further alleges:

> Prior to the sale Captain Warren said that he had not taken possession of the stock certificates and that he had improperly advertised the sale. He further said that it was the custom, practice and policy of the Davidson County Sheriff's Department to not correct errors in the exercising of its powers because, as he directly stated, "that's what indemnity bonds are for."

(Id. ¶ 46.)

Chancellor Carol McCoy heard Green's Motion to Quash on January 5, 2007 and denied it as moot because the sheriff's sale had already occurred on December 22, 2006. She also denied Green's motion for a temporary restraining order finding that Green had not pursued his request for injunctive relief. (Docket Entry No. 30-10, Chancery Court Order.)

Green moved to alter or amend the Chancellor's Order denying his motion to quash, but the Chancellor denied that motion on February 23 2007. The Chancellor rejected Green's claim that the sheriff's sale failed to comply with Tenn. Code Ann § 47-8-112(b), which provides that the interest of a debtor in an uncertificated security may be reached by a creditor "only by legal process upon the issuer at its chief executive office[.]" The Chancellor observed that Green's counsel clarified at the

5

hearing on the motion that his chief complaint was that Champs-Elysees failed to serve the writ of execution upon itself in order for the judicial lien to attach to Green's stock in Champs-Elysees. The Chancellor rejected the argument on the ground that the stock issuer, Champs-Elysees, was already a party to the action, it was the judgment creditor which caused the writ of execution to be issued, and the law did not require Champs-Elysees to undertake "the useless and meaningless act" of having the Sheriff serve the writ of execution on itself in order for the Sheriff to obtain possession of Green's stock for purposes of sale. (Docket Entry Nos. 30-11, 30-12.)

The Chancellor also rejected Green's claim that the sale was defective on the ground that the notice of sale prepared by Captain Warren misspelled "Champs-Elysees, Incorporated" as "Champs-Elyees, Inc." The Chancellor characterized this as a typographical error and noted Green did not provide any legal authority to support his claim that the error rendered the sheriff's sale defective, nor did he provide any evidence that "this minuscule typographical error harmed or caused any prejudice to any party or non-party." Next, the Chancellor rejected as frivolous Green's claim that Captain Warren's decision to move the sale from the front steps of the Jerry Newsom Center to the basement of the building rendered the sale defective. Finally, the Chancellor rejected Green's claim that the amount his brother, Mark Green, paid at the sale for Green's 22,000 shares of stock was insufficient consideration. Green filed a notice of appeal from this order to the Tennessee Court of Appeals.[1] (Docket Entry No. 30-13.)

---

[1] The Court notes that Chancellor McCoy held contempt hearings in February 2007 and entered a lengthy Order following those hearings on April 4, 2007. (Docket Entry No. 30-7.) Green's counsel was accused of trying to disrupt the sheriff's sale on December 22, 2006. Counsel videotaped his discussion with Captain Warren and Constance Taite which occurred just prior to the sale, and he brought along his close friend who purported to be a holder of stock certificate number 13 for 22,000 shares in a company called "Champs-Elyees, Inc.," the company name as misspelled on Captain Warren's notice of sale. Although counsel denied under oath his involvement in the incorporation of "Champs-Elyees, Inc." just days prior to the sheriff's sale, counsel's friend testified that the incorporation of the company and issuance of stock certificate number 13 for 22,000 shares of "Champs-Elyees, Inc." was counsel's idea, that counsel and his law partner incorporated the company, and the friend agreed to present the stock certificate at the sheriff's sale.

Chancellor McCoy ruled that counsel's conduct rose to the level of criminal contempt, but counsel had not been charged with criminal contempt. Chancellor McCoy referred the case to the Board of Professional Responsibility for consideration of action against counsel, who represents Green in this case as well. (Docket Entry No. 30-7.)

Metro and Boult Cummings move to dismiss Green's Second Amended Complaint for failure to state a claim against them under Federal Rule of Civil Procedure 12(b)(6) asserting numerous grounds for dismissal. Boult Cummings contends that, as a third-party defendant, it can raise any defense to Green's claims that Metro could raise, and because Green's claims against Metro must fail, Metro's indemnity claim against Boult Cummings also must fail.

## II. STANDARD OF REVIEW

In evaluating the Second Amended Complaint under Rule 12(b)(6), the Court must accept as true all of Green's allegations and resolve all doubts in Green's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, Green must provide the grounds for his entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 167 L.Ed.2d 929, 940 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The factual allegations supplied must be enough to show a plausible right to relief. Id. at 940-942. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

## III. ANALYSIS

Having carefully reviewed the case, the Court concludes that Green's Second Amended Complaint must be dismissed for failure to state a claim against Metro. Green does not attack the issuance of the execution and levy. (Docket Entry No. 42, Green's Response and Memorandum at 15, 17.) Rather, he complains about one act and one omission of Captain Warren in the course of executing the levy and conducting the sale: (1) Captain Warren misspelled the name of the judgment creditor in the notice of sale, which Green claims rendered the sale defective because Captain Warren sold shares of stock in "Champs-Elyees" and not "Champs-Elysees, Incorporated"; and (2) before the sale Captain Warren did not serve the execution and levy on Champs-Elysees' executive office in accordance with Tenn. Code Ann. § 47-8-112(b) in order to assert dominion over Green's

7

uncertificated securities for the purpose of selling them pursuant to the execution and levy. Thus, Green's complaints arise from an alleged act and an alleged omission of Captain Warren done in his official capacity as a law enforcement officer of Metro.

A suit for damages against a government official in his official capacity is a suit against the government itself. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Green has not named Captain Warren as a separate defendant in the case, but it is helpful to note that Captain Warren's tasks in executing the levy and conducting the sale were so integral or intertwined with the judicial process as to be considered the "figurative arms of the very commanding judge who is immune." Shelton v. Wallace, 886 F. Supp. 1365, 1371 (S.D. Ohio 1995) "Just as a judge acting in [her] judicial capacity is absolutely immune from liability under 42 U.S.C. § 1983, an official charged with the duty of executing a facially-valid court order also enjoys absolute immunity from liability from damages in a suit challenging conduct prescribed in that order." Id. (applying "functional approach" to the immunity analysis as directed by the Supreme Court in Forrester v. White, 484 U.S. 219, 229 (1988); Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994) (observing absolute judicial immunity extends to non-judicial officers who perform "quasi-judicial" duties); Hirsch v. Copenhaver, 839 F. Supp. 1524, (D. Wyo 1993) (noting those who execute judicial decrees are entitled "to the protective cloak of immunity"). Captain Warren was entitled to the protection of quasi-judicial immunity for any actions and omissions occurring in his official capacity as he executed this particular levy and conducted the sheriff's sale.

In order to hold Metro liable under § 1983 for the act or omission of Captain Warren in his official capacity, Green must allege that Captain Warren's act or omission was the result of an official policy, practice, or custom of Metro and that such policy, practice, or custom was the actual moving force behind the constitutional violations Green alleges. See Monell v. Department of Social Servs., 436 U.S. 658, 690-691, 694 (1978); Johnson v. Hardin County, 908 F.2d 1280, 1285 (6th Cir. 1990). Green stated in his Second Amended Complaint that on December 6, 2006, both Captain Warren and Constance Taite advised Green's counsel "that it is the custom, practice and policy of

8

the Davidson County Sheriff's Department not to exercise independent judgment to correct, modify, or review any Levy issued by a court, regardless of its facial validity[.]" (Id. ¶¶ 29-30.) Assuming these statements were, in fact, made and setting aside for a moment that Green now represents he does not challenge the issuance of the writ of execution, Captain Warren and Ms. Taite in effect informed Green that it was not their place to second-guess the facial validity and issuance of the writ of execution.

Green's allegations are insufficient to meet his high burden to plead an unconstitutional policy, custom or practice of Metro. In Shelton v. Wallace, 91 F.3d 144, 1996 WL 428363 *3 (6th Cir. 1996) (unpublished), municipal and county officers executed a facially valid temporary restraining order issued by a state court judge. The Sixth Circuit held that "[t]he policy of enforcing state court orders, even if we assume that those orders may from time to time be erroneous, cannot be an unconstitutional policy. Id. at *3 (emphasis added). Thus, Captain Warren's action in enforcing a facially-valid writ of execution issued by the clerk's office pursuant to Chancellor McCoy's final judgment cannot amount to an unconstitutional policy under § 1983. Thus, Green fails to state a claim against Metro based on these allegations in his Second Amended Complaint.

Green further alleges that, prior to the sale, Captain Warren stated it was the custom, practice and policy of the Davidson County Sheriff's Department to not correct errors in the exercise of its powers because "that's what indemnity bonds are for." (Second Amended Complaint ¶ 46.) Even assuming this statement was made, Green has not met his burden to allege an unconstitutional policy, custom or practice of Metro that was the "moving force" behind the alleged violation of his constitutional rights. See City of Canton v. Harris, 489 U.S. 378, 389 (1989). Green has not alleged "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembauer v. City of Cincinnati, 475 U.S. 469, 483 (1986). Nor has Green alleged a "custom" that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691; Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993).

9

Finally, even if Green has sufficiently alleged the existence of a policy, custom or practice of the Sheriff's Office not to correct its own mistakes, Green cannot obtain relief for any purported constitutional violation in this case. Chancellor McCoy addressed all of the pertinent issues in the state court suit brought before her. She specifically ruled that Captain Warren did not violate Tenn. Code Ann. § 47-8-112(b) when he failed to serve the writ of execution and levy on Champs-Elysees at its executive office because to do so would have been a futile and meaningless act. Champs-Elysees was a party to the litigation and was the judgment creditor that sought issuance of the execution and levy in the first place. Chancellor McCoy also decided that Captain Warren's typographical misspelling on the notice of sheriff's sale did not invalidate the sale.

This Court is barred by the doctrine of collateral estoppel from re-litigating the issues Chancellor McCoy decided against Green. See Bills v. Aseltine, 52 F.3d 596, 604 (6th Cir. 1995). The precise issues Green raises in this case were previously litigated by Chancellor McCoy, determination of these issues was necessary to the outcome of that proceeding, the prior proceeding resulted in a judgment on the merits, and Green had a full and fair opportunity to litigate the issues before Chancellor McCoy. See id. Because Green and Metro were parties in the state court suit, this Court is also barred by the doctrine of *res judicata* from litigating any federal constitutional issues that Green had the opportunity to raise in the state court litigation. Dubuc v. Green Oak Twp., 312 F.3d 736, 744 (6th Cir. 2002); Bates v. Van Buren Twp., 122 Fed. Appx. 803, 807 (6th Cir. 2004) (noting state courts have concurrent jurisdiction with federal courts to rule on federal constitutional claims). Accordingly, this Court will not permit Green to make an end-run around Chancellor McCoy's rulings. Her final judgment is entitled to the same preclusive effect in this Court as it is given in the rendering state. See id.

Because the Court will dismiss the federal § 1983 claims against Metro, the Court declines to exercise supplemental jurisdiction over Green's state law claim for false return. 28 U.S.C. § 1367(c)(3). See Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 583 (6th Cir. 2007). Because

10

Green's §1983 claims against Metro fail, Metro's indemnity claim against Boult Cummings on those claims must also fail.

## IV. CONCLUSION

For all of the reasons stated, the Motions to Dismiss filed by Metro and Boult Cummings will be granted. Under Rule 12(b)(6) the Court will dismiss with prejudice Green's § 1983 claims against Metro, as well as Metro's indemnity claim against Boult Cummings predicated on Green's § 1983 claims. The Court will dismiss without prejudice for lack of supplemental jurisdiction Green's state-law claim against Metro for false return. Likewise, the Court will dismiss without prejudice Metro's indemnity claim against Boult Cummings on the state-law false return claim.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE