IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN WESLEY GREEN | ) |
| | ) |
| v. | ) |
| | ) |
| METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE AND DAVIDSON | ) NO. 3-06-1216 |
| COUNTY | ) JUDGE CAMPBELL |
| | ) |
| v. | ) |
| | ) |
| BOULT, CUMMINGS, CONNERS | ) |
| & BERRY, PLC, et al. | ) |

MEMORANDUM

Pending before the Court are the following Motions: Plaintiff's Motion for Partial Summary Judgment (Docket No. 127); Defendants' and Third-Party Defendants'[1] Motion for Summary Judgment (Docket No. 129); Defendants' and Third-Party Defendants' Motion to Strike (Docket No. 139); Plaintiff's Motion to Allow Amended Statement of Additional Facts (Docket No. 149); and Plaintiff's Motion to Accept "Late-Filed" Exhibits (Docket No. 151).

For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment (Docket No. 127) is DENIED; Defendants' and Third-Party Defendants' Motion for Summary Judgment (Docket No. 129) is GRANTED; Defendants' and Third-Party Defendants' Motion to Strike (Docket No. 139) is moot; Plaintiff's Motion to Allow Amended Statement of Additional Facts (Docket No. 149) is GRANTED; and Plaintiff's Motion to Accept "Late-Filed" Exhibits (Docket No. 151) is GRANTED.

---

[1] Metro brought a third-party claim on the indemnity bond provided by counsel for the judgment creditor Champs-Elysees, Incorporated with respect to the underlying judgment.

FACTS

This action arises from the execution by Defendant Metropolitan Government ("Metro"), pursuant to a Davidson County Chancery Court Judgment and Writ of Execution, upon certain property belonging to Plaintiff, specifically 22,000 shares of stock in a company called Champs-Elysees, Incorporated. Plaintiff asserts that the execution and subsequent sale of that stock violated his constitutional rights under the Fourth, Fifth and Fourteenth Amendments.

The state court action from which this case arises involved an intra-family dispute over the sale of stock in a closely-held corporation. *Green v. Green*, 293 S.W.3d 493 (Tenn. 2009). After his mother declined to honor her contract to convey her stock, John Wesley Green filed suit in Chancery Court to compel her to complete the sale. *Id*. Edna Green counterclaimed for rescission of the contract, and the corporation (Champs-Elysees) intervened and filed a claim against John Wesley Green to recover allegedly misappropriated corporate funds. *Id*. The Chancery Court granted summary judgment motions in favor of Edna Green and the corporation.[2]

Based upon the judgments in favor of Edna Green and Champs-Elysees, the Chancery Court issued an Execution/Garnishment/Levy with respect to Mr. Green's 22,000 shares of stock in Champs-Elysees. The Description of Property section of the Writ of Execution listed the property

---

[2] On appeal, the Tennessee Court of Appeals reversed both summary judgments, and the Tennessee Supreme Court affirmed the ruling of the Tennessee Court of Appeals. *Green v. Green*, 293 S.W.3d 493 (Tenn. 2009). The Tennessee Court of Appeals also reversed the judgment of the Chancery Court denying Mr. Green's requests to enjoin and then to set aside the sale of Plaintiff's stock. 2009 WL 3672806 (Tenn. Ct. App. Nov. 4, 2009). The Court finds no evidence in the record of what happened on remand with these cases except that the Sixth Circuit opinion states: "The state case was indeed remanded for a trial that has reportedly been conducted - which, according to Green, included extensive testimony related to the levy and execution - and the matter is again on appeal before the Tennessee Court of Appeals." Docket No. 118, p. 7.

as "Stock in CHamps-Elysees, Incorporated," with the H in Champs capitalized. The Writ of Execution was issued without a list of exemptions attached. Plaintiff avers that he had filed in Chancery Court, before the Writ was issued, a list of exemptions which included his Champs-Elysees stock. The List of Exemptions (Docket No. 145-10) specifically lists, under the heading "Furniture," "STOCK IN C-E," Value "UNKNOWN."

On November 17, 2006, an officer with the Metro Police Department appeared at Plaintiff's residence to obtain Plaintiff's Champs-Elysees stock. Plaintiff advised the officer that the stock certificates were not in his possession and that he believed them to be in the possession of his legal counsel.[3] On November 30, 2006, an officer with the Metro Police Department again appeared at Plaintiff's residence seeking Plaintiff's Champs-Elysees stock. Plaintiff again advised the officer that the stock certificates were not in his possession and that he believed them to be in the possession of his legal counsel.

On this second visit, the officer served Plaintiff with a copy of the Writ of Execution and told Plaintiff that the Metro Sheriff's Department was going to sell Plaintiff's Champs-Elysees stock. Later, Plaintiff received a letter from the Sheriff's Department including a Notice of Sale on December 22, 2006, of 22,000 shares of stock in "Champ-Elyees, Inc." The Notice of Sale misspells the name of the corporation by one letter. Plaintiff claims that he owns no stock in Champ-Elyees, Inc. Plaintiff also claims he owns no stock in Champ-Elysees, Inc.; rather, he owns stock in Champ-

---

[3] Despite this representation to the officer, Plaintiff now claims that Champs-Elysees does not have valid stock certificates for its shares of stock. Docket No. 128, ¶ 4. Yet Plaintiff argues that the Writ of Execution was illegal because Defendant did not take *possession* of Plaintiff's stock.

3

Elysees, Incorporated. Plaintiff also asserts that Champ-Elyees (as listed on the Notice of Sale) is a corporation in good standing in Tennessee owned by a third party.[4]

Plaintiff alleges that Defendant also violated Tenn. Code Ann. § 47-8-112, which provides that the interest of a debtor in an uncertificated security may be reached by a creditor only by legal process upon the *issuer* at its chief executive office. Plaintiff claims that the Sheriff's Writ of Execution did not attach to his stock because the issuer of that stock, Champs-Elysees, was never served with the Writ of Execution.[5]

Plaintiff alleges that his counsel advised two employees of the Metro Sheriff's Department of the errors in the Writ of Execution and in the Notice of Sale. Plaintiff asserts that both employees told Plaintiff's counsel that it was the custom, practice and policy of the Metro Sheriff's Department to not exercise independent judgment to correct, modify or review any Writ of Execution issued by a court, regardless of whether it was facially invalid.

Plaintiff filed a Motion to Quash in the Chancery Court, contending that the Writ of Execution and Notice of Sale were defective. The Chancery Court denied his Motion to Quash. On December 22, 2006, Defendant sold Plaintiff's 22,000 shares of Champs-Elysees stock for $936.50. This lawsuit followed. Notably, Plaintiff did not name any individual Defendants.

---

[4] This claim by Plaintiff was the subject of a Verified Petition for Contempt against Plaintiff's counsel in the Chancery Court for forming a bogus corporation in the misspelled name of Champ-Elyees, Inc. Docket No. 30-7.

[5] Defendant asserts that the Notice of Sale included information that the stock was being sold to satisfy a judgment in favor of Edna Green and Champs-Elysees, Inc. and also a "Certificate of Ownership" signed by the Secretary of the corporation correctly spelling the corporate name. Defendant states that it did not serve a copy of the Writ of Execution upon the corporation because the corporation was also the judgment creditor for whose benefit the Writ was issued.

Another judge of this Court, now retired, dismissed this case in March of 2008, primarily based upon the conclusion that Plaintiff had failed to allege a municipal custom or policy that was the moving force behind a constitutional violation. Plaintiff appealed. The Sixth Circuit Court of Appeals reversed that judgment and remanded the case for further proceedings. The Sixth Circuit held that Plaintiff had sufficiently alleged, for purposes of a Motion to Dismiss, a custom, policy or practice of the Sheriff's Office which purportedly violated Plaintiff's constitutional rights.

Upon remand, the parties have filed Motions for Summary Judgment, which are the subject of this Memorandum.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been

5

presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

ANALYSIS

Plaintiff brings his federal claims against Defendant pursuant to 28 U.S.C. § 1983. To prove a Section 1983 claim, Plaintiff must establish that: (1) he was deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under color of state law. *Spurlock v. Whitley*, 971 F.Supp. 1166, 1175 (M.D. Tenn. 1997). Plaintiff alleges that his personal property (stock) was unconstitutionally seized and sold by Defendant, in violation of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights.

To establish municipal liability under Section 1983, Plaintiff must establish that his harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of Plaintiff's rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs. *Id.*

Plaintiff has alleged that the custom, policy or practice which caused the violation of his rights was the Sheriff Department's alleged policy of not exercising independent judgment to correct, modify or review any court-issued levy regardless of its facial validity. As noted above, Plaintiff asserts that two Sheriff's Department employees told Plaintiff's counsel of this policy by telephone. Docket No. 132, p. 16. Plaintiff has not shown that he has personal knowledge of these phone

6

conversations. Plaintiff has also asserted that a Sheriff's Department employee stated at the sale of Plaintiff's stock that it is the custom, practice and policy of the Davidson County Sheriff's Department not to correct errors in the exercising of its powers because "that's what indemnity bonds are for." *Id.* at p. 17. Plaintiff has not shown that he was present at the sale.

These assertions by Plaintiff are merely assertions. Plaintiff relies on his Second Amended Complaint and his own briefs in support of his assertions. Plaintiff has not offered evidence of the type required by Fed. R. Civ. P. 56 to support these allegations concerning custom, policy or practice for purposes of summary judgment.[6] For example, there is no Affidavit, deposition testimony, documentary evidence or stipulation as to whether the employees actually made these statements about Metro's policies, much less as to whether they were true. The allegations of custom, policy or practice rely upon purported conversations between Plaintiff's counsel and the two Metro employees, for which Plaintiff has not offered admissible proof.[5]

At the summary judgment stage, the Plaintiff may not rest on his pleadings alone, but he must set forth specific facts showing that there is a genuine issue for trial. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A "mere scintilla" of evidence is not enough. *Id.* Plaintiff has not carried his burden of setting forth sufficient evidence for summary judgment purposes.

On the other hand, Defendant has provided evidence, through the sworn deposition testimony of both Sheriff's Department employees, Warren and Taite, that their normal procedure was to make

---

[6] On a motion to dismiss, such as was before the Sixth Circuit Court of Appeals earlier in this litigation, the Court must accept the factual allegations of the Complaint as true.

[5] Plaintiff has also not provided authority or evidence to support a finding that either of these two Metro employees had final policymaking responsibility for Defendant with respect to this subject.

7

any corrections of typographical errors at least by the time of the sale. Docket No. 131-2, p. 17-19; Docket No. 131-5, p. 10 ("Whenever I discover that the Sheriff's office made an error we try to correct the error.").

All the alleged errors surrounding this sale arose from a single incident. There is no admissible evidence of a pattern or practice to ignore typographical errors in Writs of Execution or Notices of Sale. Plaintiff has failed to show that his alleged injuries arose from a custom, practice or policy of the Metropolitan Government. Citing to his Second Amended Complaint and his own briefs is not enough to show facts sufficient for summary judgment. Therefore, he cannot show municipal liability on his Section 1983 claims.

For these reasons, Plaintiff's federal claims against Defendant are DISMISSED with prejudice. The Court declines, pursuant to 28 U.S.C. § 1367(c), to take supplemental jurisdiction over Plaintiff's state law claim. That claim for false return is DISMISSED without prejudice.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE